UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------ X

PEARSON EDUCATION, INC., JOHN
WILEY & SONS, INC., CENGAGE
LEARNING, INC., AND THE
MCGRAW-HILL COMPANIES, INC.,

             **Plaintiffs,**

        **- against -**

MOHIT ARORA D/B/A
BESTECONOMYBOOKS AND JOHN
DOE NOS. 1-5,

            **Defendants.**

------------------------------------------------ X

**OPINION AND ORDER**

**09 Civ. 5742 (SAS)**



**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

       Pearson Education, Inc. ("Pearson"),[1] John Wiley & Sons, Inc.

("Wiley"), Cengage Learning, Inc. ("Cengage"), and The McGraw-Hill

---

      [1]     Prior names of Pearson include Prentice-Hall, Inc.; Addison-Wesley
Publishing Company, Inc.; and Addison Wesley Longman, Inc. *See* Declaration
of Richard Essig ("Essig Decl."), Vice President of the Intellectual Property Group
at Pearson, in Support of Pearson and McGraw-Hill Motion for Summary
Judgment ¶ 4 (documentation of name changes). *See* Certificates of Amendment,
Exs. 1-2 to Essig Decl.; *see also* Board Resolution and Contribution Agreement,
Exs. 3-4 to Essig Decl.

Companies, Inc. ("McGraw-Hill") bring this action for copyright and trademark

infringement against Mohit Arora, doing business as Besteconomybooks and

proceeding pro se, and against five John Doe defendants.[2]  Pearson and McGraw-

Hill (the "Publishing Companies") now seek summary judgment on their copyright

claim under 17 U.S.C. § 602, seeking $50,250 in statutory damages representing

$750 for each of the sixty-seven copyrights involved.[3]  For the reasons stated

herein, the Publishing Companies' motion is granted.[4]

## II.    BACKGROUND

Pearson and McGraw-Hill are publishers of educational textbooks.[5]

Arora is a natural person also known by the username "besteconomybooks" and is

---

[2]    Wiley and Cengage filed a joint Notice of Partial Dismissal pursuant
to Federal Rule of Civil Procedure 41(a)(1) on March 17, 2010, voluntarily
dismissing without prejudice their claims against all defendants. *See* Docket No.
17.

[3]    The Publishing Companies have neither identified nor served any of
the John Doe defendants.

[4]    Pearson received written notice of his right to oppose this motion but
has failed to do so. *See* April 12, 2010 Order, Docket No. 26 (ordering Arora to
file opposition papers by May 3, 2010).

[5]    *See* Pearson and McGraw-Hill Memorandum of Law in Support of
the Motion for Summary Judgment ("Pl. Mem.") at 1.

associated with a website known as Abebooks.com.[6]  The identities and actions of

the John Doe defendants are presently unknown.

The Publishing Companies own United States copyrights for their

respective publications ("United States Books").[7]  Foreign editions of United

States Books ("Foreign Editions") are virtually identical in content except for the

lesser quality of the printing and binding and the location of printing outside the

United States.[8]  Arora engaged in the business of purchasing Foreign Editions of

educational books and reselling them in the United States using a website known

as Abebooks.com.[9]  Specifically, Arora sold Foreign Editions of Pearson's

copyrighted works (the "Pearson Works") in the United States after Pearson had

---

[6]    *See* Publishing Companies Rule 56.1 Statement ("Pl. 56.1 ") ¶ 4; *see also* Declaration of Jennifer Siewert ("Siewert Decl."), purchaser of textbooks from Abebooks.com ¶ 2.

[7]    *See* Pl. 56.1 ¶¶ 1-2. *See also* Essig Decl. ¶ 3; Photocopies of copyright registrations for Pearson Works, Ex. A to Publishing Companies Motion for Summary Judgment; Declaration of Bonnie Beacher ("Beacher Decl."), Senior Director of Contracts, Copyrights, and Permissions at McGraw-Hill, in Support of Publishing Companies Motion for Summary Judgment ¶ 3; Photocopies of copyright registrations for McGraw Works, Ex. B to Publishing Companies Motion for Summary Judgment.

[8]    *See* Pl. 56.1 ¶ 3. *See also* Essig. Decl. ¶ 5; Beacher Decl. ¶ 5.

[9]    *See* Pl. 56.1 ¶ 4. *See also* Deposition of Mohit Arora at 62:22-63:17, Ex. E to Declaration of Laura Scileppi ("Scileppi Decl."), Publishing Companies' Counsel (Ex. E filed separately); Siewert Decl. ¶¶ 2-3.

registered United States copyrights.[10]  Arora also sold Foreign Editions of
McGraw-Hill's works (the "McGraw Works") after McGraw-Hill had registered
United States copyrights.[11]

On February 16, 2010, the parties signed a stipulation consenting to
the permanent injunction of Arora from (1) "infringing the registered copyrights
and trademarks" of Pearson, Wiley, Cengage, and McGraw-Hill; (2) "falsely
designating the origin of their products or services in violation of the rights" of
Pearson, Wiley, Cengage, and McGraw-Hill; and (3) infringing any copyright or
trademark of  Pearson, Wiley, Cengage, or McGraw-Hill "through the sale in the
United States of any copy of any foreign edition of their works printed outside of
the United States and marked to prohibit its importation into, or sale in, the United
States."[12]

## III.   APPLICABLE LAW

### A.   Summary Judgment

Summary judgment is appropriate "if the pleadings, the discovery and

---

[10]      *See* Pl. 56.1 ¶ 5; *see also* Essig Decl. ¶ 3; List of Pearson Works
copyrights and sales, Ex. H. to Scileppi Decl.

[11]      *See* Pl. 56.1 ¶ 6; *see also* List of McGraw Works copyrights and sales,
Ex. I to Scileppi Decl.

[12]      Permanent Injunction By Consent, dated February 16, 2010.

4

disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[13] "'An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law.'"[14] "[T]he burden of demonstrating that no material fact exists lies with the moving party . . . ."[15] "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the non[-]movant's claim."[16]

To defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact.[17] The non-moving party must do more than show that there is "'some metaphysical doubt as to the material facts,'"[18] and

---

[13]    Fed. R. Civ. P. 56(c).

[14]    *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 34 (2d Cir. 2008)).

[15]    *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (citing *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)).

[16]    *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

[17]    *See id.*

[18]    *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

it "'may not rely on conclusory allegations or unsubstantiated speculation.'"[19]

Nevertheless, "'all that is required [from a non-moving party] is that sufficient

evidence supporting the claimed factual dispute be shown to require a jury or

judge to resolve the parties' differing versions of the truth at trial.'"[20]

In determining whether a genuine issue of material fact exists, the

court must "constru[e] the evidence in the light most favorable to the non-moving

party and draw all reasonable inferences" in that party's favor.[21]  Even so, "'only

admissible evidence need be considered by the trial court in ruling on a motion for

summary judgment.'"[22]  "'Credibility assessments, choices between conflicting

versions of the events, and the weighing of evidence are matters for the jury, not

for the court on a motion for summary judgment.'"[23]  Summary judgment is

---

[19]     *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005)
(quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)).

[20]     *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199,
206 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49
(1986)).

[21]     *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) (citing *Anderson*,
477 U.S. at 247-50, 255).

[22]     *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d
244, 264 (2d Cir. 2009) (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 65 (2d Cir.
1997)).

[23]     *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Fischl
v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)).

therefore "appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[24]

When the non-moving party "'chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.'"[25] If the movant does not meet its burden of production, then the court must deny summary judgment even if the non-movant does not oppose the motion.[26] Moreover, the court may not rely solely on the movant's statement of undisputed facts contained in its Rule 56.1 statement.[27] The court must be satisfied that the movant's assertions are supported by the evidence in the record.[28]

**B.     The Copyright Act[29]**

---

[24]     *Pyke v. Cuomo*, 567 F.3d 74, 76 (2d Cir. 2009).

[25]     *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (quoting *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001)).

[26]     *See id.* (citing *Amaker*, 274 F.3d at 681).

[27]     *See id.*

[28]     *See id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)).

[29]     17 U.S.C. § 101 *et seq.*

7

"A claim of copyright infringement under federal law requires proof

that (1) the plaintiff had a valid copyright in the work allegedly infringed and (2)

the defendant infringed the plaintiff's copyright by violating one of the exclusive

rights that 17 U.S.C. § 106 bestows upon the copyright holder."[30]  Section 106

provides, in relevant part, that

> the owner of copyright under this title has the exclusive
> rights to do and to authorize any of the following: (1) to
> reproduce the copyrighted work in copies or phonorecords;
> (2) to prepare derivative works based upon the copyrighted
> work; (3) to distribute copies or phonorecords of the
> copyrighted work to the public by sale or other transfer of
> ownership, or by rental, lease, or lending . . . .[31]

The provisions of section 106 are qualified by the "first sale" doctrine, now

codified in Section 109(a) of Title 17:

> the owner of a particular copy . . . lawfully made under this
> title, or any person authorized by such owner, is entitled,
> without the authority of the copyright owner, to sell or
> otherwise dispose of the possession of that copy . . . .[32]

---

[30]  *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 260 (2d Cir. 2005).

[31]  17 U.S.C. §§ 106(1)-(3).

[32]  *Id.* § 109(a) (codifying *Bobbs-Merrill Co. v. Straus*, 210 U.S. 339, 350-51 (1908)). "The purchaser of a book, once sold by authority of the owner of the copyright, may sell it again, although he could not publish a new edition of it . . . . In our view the copyright statutes, while protecting the owner of the copyright in his right to multiply and sell his production, do not create the right to

8

In essence, "once the copyright owner places a copyrighted item in the stream of commerce by selling it, he has exhausted his exclusive statutory right to control its distribution."[33]

Despite this broad "first sale" language, the Copyright Act also provides in section 602(a)(1) that:

> Importation into the United States, without the authority of the owner of copyright under this title, of copies . . . of a work that [has] been acquired outside the United States is an infringement of the exclusive right to distribute copies . . . under section 106, actionable under section 501.[34]

In light of the seemingly-contradictory provisions of section 109 and section 602, the Supreme Court held in *Quality King Distributors, Inc. v. L'anza Research Int'l, Inc.* that a copyright owner's section 602 right to control the importation of United States-manufactured copies of a work is subject to the "first sale" doctrine given that the "first sale" provision governs section 106, which is in turn directly

---

impose, by notice, such as is disclosed in this case, a limitation at which the book shall be sold at retail by future purchasers, with whom there is no privity of contract." *Bobbs-Merrill*, 210 U.S. at 350-51.

[33] *Quality King Distributors, Inc. v. L'anza Research Int'l, Inc.*, 523 U.S. 135, 152 (1998).

[34] 17 U.S.C. § 602(a)(1). Section 501(a) provides that "Anyone who . . . imports copies . . . into the United States in violation of section 602, is an infringer of the copyright or right of the author, as the case may be." 17 U.S.C. § 501.

implicated in the language of section 602.[35]

Prior to *Quality King*, courts had been divided on the geographic

implications of the phrase "lawfully made under this title" as regards a foreign

manufacturing location of a United States copyrighted work:[36]

> On one hand, some courts have held that because a U.S.
> copyright holder cannot sue a foreign manufacturer for
> violating [the U.S. holder's] exclusive right to reproduce a
> copyrighted work . . . a copy manufactured abroad is born
> in a state of legal limbo, neither legal nor illegal as a matter
> of U.S. law. On this view, a copy of a copyrighted work is
> not "lawfully made under this title" unless it also is
> "legally manufactured . . . within the United States." Other
> courts have confessed some uneasiness with this
> construction, implicitly suggesting that "lawfully made
> under this title" refers not to the place a copy is
> manufactured, but to the lawfulness of its manufacture as
> a function of U.S. copyright law.[37]

Though the Supreme Court did not specifically address the question of whether

section 109 would also apply to a United States-copyrighted work manufactured

abroad, the Court suggested in dicta that "presumably only those [copies] made by

the publisher of the U.S. edition would be 'lawfully made under this title' within

---

[35]     *See Quality King*, 523 U.S. at 145.

[36]     *See Pearson Educ., Inc. v. Liu*, 656 F. Supp. 2d 407, 412 (S.D.N.Y.
2009).

[37]     *Id.* (quotation marks and citations omitted).

10

the meaning of § 109(a)."[38] The Second Circuit has neither cited nor commented

on *Quality King* or the applicability of section 109 to section 602. This Court has

– albeit unenthusiastically – followed the Supreme Court's suggestion that the

"first sale" rule does not apply to works copyrighted in the United States,

manufactured abroad, and subsequently imported and sold in the United States.[39]

---

[38]     *Quality King*, 523 U.S. at 148. The Court describes an example of an author publishing both a United States and British version of a copyrighted work:

> If the author of the work gave the exclusive United States distribution rights – enforceable under the Act – to the publisher of the United States edition and the exclusive British distribution rights to the publisher of the British edition . . . presumably only those made by the publisher of the United States edition would be "lawfully made under this title" within the meaning of § 109(a). The first sale doctrine would not provide the publisher of the British edition who decided to sell in the American market with a defense to an action under § 602(a).

*Id.* at 145.

[39]     *See, e.g., Pearson*, 656 F. Supp. 2d at 415 ("The Court provisionally is of the view that nothing in § 109(a) or the history, purposes, and policies of the first-sale doctrine, limits the doctrine to copies of a work manufactured in the United States. This analysis, however, overlooks an important piece of data: In *Quality King*, the Supreme Court spoke directly to whether the first-sale doctrine applies to copies manufactured abroad . . . . This Court therefore holds, *dubitante*, that the first-sale doctrine does not apply to copies of a copyrighted work manufactured abroad."); *John Wiley & Sons, Inc. v. Kirtsaeng*, No. 08 Civ. 7834, 2009 WL 3364037, at *5 (S.D.N.Y. Oct. 19, 2009) ("[D]oes the importation prohibition in section 602(a)(1) apply, despite a 'first sale' abroad where the goods were lawfully made abroad rather than in the United States? For the following

11

## C.    Statutory Damages

Section 504(c)(1) provides the following statutory guidelines for

damages resulting from copyright infringement:

> The copyright owner may elect, at any time before final
> judgment is rendered, to recover, instead of actual damages
> and profits, an award of statutory damages for all
> infringements involved in the action, with respect to any
> one work, for which any one infringer is liable
> individually, or for which any two or more infringers are
> liable jointly and severally, in a sum of not less than $750
> or more than $30,000 as the court considers just. For the
> purposes of this subsection, all the parts of a compilation
> or derivative work constitute one work.

In calculating the amount of statutory damages to award for copyright

infringement, courts consider: "(1) the infringer's state of mind; (2) the expenses

saved, and profits earned, by the infringer; (3) the revenue lost by the copyright

holder; (4) the deterrent effect on the infringer and third parties; (5) the infringer's

cooperation in providing evidence concerning the value of the infringing material;

---

reasons, this court answers this question in the affirmative . . . . This is, however,
a relatively close jurisprudential question . . . . As explained below, the court has
reservations about the wisdom of a bright-line rule in the application of section
109(a) to this situation. Nevertheless, following the Supreme Court's dicta in
*Quality King*, the court reads section 109(a)'s language to render the 'first sale'
defense unavailable to the goods manufactured in a foreign country at issue
here.").

and (6) the conduct and attitude of the parties."[40]

## IV.  DISCUSSION

Because Arora has not opposed this motion, the facts as presented are
undisputed. As such, I have examined the Publishing Companies' submissions
and I find that the Publishing Companies have met their burden of demonstrating
that no material issue of fact remains for trial.[41]  As discussed above and in
accordance with the holding of *Quality King*, the "first sale" doctrine codified in
section 109 does not shield Arora from liability under section 602 for importing
United States-copyrighted, foreign-manufactured books into the United States for
resale.

The record demonstrates that the Publishing Companies hold valid
copyrights for the Pearson Works and the McGraw Works.[42]  The record further
demonstrates that Arora (1) purchased copies of the Publishing Companies'

---

[40]     *Bryant v. Media Right Prods.*, No. 09 Civ. 2600, 2010 WL 1659113,
at \*6 (2d Cir. Apr. 27, 2010) (citing *N.A.S. Import, Corp. v. Chenson Enters., Inc.*,
968 F.2d 250, 252-53 (2d Cir. 1993)).

[41]     *See Vermont Teddy Bear Co.*, 373 F.3d at 244.

[42]     *See* Essig Decl. ¶ 3 (list of Pearson Works); *see also* Photocopies of
copyright registration certificates for each Pearson Work, Ex. A to Essig Decl.;
Beacher Decl. ¶ 3 (list of McGraw Works); *see also* Photocopies of copyright
registration certificates for each McGraw Work, Ex. B to Beacher Decl.

13

Foreign Editions manufactured abroad, and (2) subsequently imported and sold the

Foreign Editions in the United States without the authority of the respective

copyright owners. In fact, Arora states directly in his deposition that he "sold

some of the used . . . foreign edition [sic]."[43] The Publishing Companies also offer

extensive evidence of Arora's United States sales of the Foreign Editions of the

Pearson Works and the McGraw Works.[44] The Publishing Companies further

present evidence that as late as March 2009, customers bought Foreign Editions of

Publishing Companies' works from an individual with the username

"besteconomybooks" via the website Abebooks.com.[45] Transactions with the

individual known as "besteconomybooks" yielded distributions of the Foreign

---

[43]     Ex. E to Scileppi Decl. at 20:9; *see id.* 27:17-20 ("Q: Do you agree
that you imported a foreign edition of 'Accounting: Texts and Cases' into the
United States? A: Yes.").

[44]     In response to a subpoena (to which Arora consented), *see* Ex. F to
Scileppi Decl., Amazon.com – the corporate parent of Abebooks.com – provided
the Publishing Companies with emails documenting sales of books by Arora. The
Publishing Companies submitted these emails to the Court via CD as the records
were voluminous. Based on the information contained in the CD, the Publishing
Companies provided summary lists including the names of Pearson Works and
McGraw Works sold by Arora, the dates of sale, and the dates of copyright
registration for each Work. *See* Scileppi Decl. ¶¶ 9-11; *see also* "Pearson
Copyrights and Sales," Ex. H to Scileppi Decl.; "McGraw-Hill Copyrights and
Sales," Ex. I to Scileppi Decl.

[45]     *See* Siewert Decl. ¶ 2.

14

Editions from "M Arora."[46]

Given the evidence presented by the Publishing Companies and
Arora's failure to oppose the motion, summary judgment is granted as to the
Publishing Companies' copyright infringement claim. As requested by the
Publishing Companies,[47] statutory damages are appropriate in the amount of $750
– the lowest amount of statutory damages – for each of the sixty-seven Publishing
Companies' works infringed by Arora for a total of $50,250.

## V.   CONCLUSION

For the reasons stated herein, Pearson and McGraw-Hill's motion for
summary judgment is granted. Statutory damages are awarded to Pearson in the
amount of $5,250 representing $750 for each of the seven Pearson Works that
Arora infringed. Statutory damages are also awarded to McGraw-Hill for $45,000
representing $750 for each of the sixty McGraw Works that Arora infringed. The
Clerk of the Court is directed to close this motion [Docket No. 18] and this case.

---

[46]     *See id.*

[47]     *See* Pl. Mem. at 6.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            June 7, 2010

...

## - Appearances -

**For Plaintiffs:**

William Dunnegan, Esq.
Laura Scileppi, Esq.
DUNNEGAN LLC
350 Fifth Avenue
New York, New York 10118
(212) 332-8300

**Defendant (pro se):**

Mohit Arora
21 Lincoln Place, Apt. H
North Brunswick, New Jersey 08902